11 F.3d 991
 Rick Dean PETRICK, Plaintiff-Appellant,
v.
Gary D. MAYNARD, Director, Department of Corrections, State
of Oklahoma; Dan Reynolds, Warden of Oklahoma State
Penitentiary; Billy Key, Law Library Supervisor, Oklahoma
State Penitentiary, Defendant-Appellant.
 No. 93-7062.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 13, 1993.
 
 Rick Dean Petrick, pro se.
 Karin M. Kriz, Asst. Atty. Gen., Oklahoma City, OK (Susan B. Loving, Atty. Gen., with her on the brief), for defendant-appellee.
 Before SEYMOUR, ANDERSON and EBEL, Circuit Judges.
 EBEL, Circuit Judge.
 
 
 1
 In this appeal, we consider whether Oklahoma deprived a state inmate of his constitutional right of meaningful access to the courts by failing to provide requested legal materials.[1] The Plaintiff-Appellant, Rick Dean Petrick ("Petrick"), an inmate at the Oklahoma State Penitentiary ("OSP"), filed this pro se civil rights action pursuant to 42 U.S.C. Sec. 1983. He alleged that OSP's inability to obtain specified legal materials precluded him from attacking prior convictions in North Dakota and Minnesota.[2] These prior convictions were used to enhance the sentence arising from an Oklahoma conviction that he is currently serving. The district court granted summary judgment in favor of the Defendants. We reverse.
 
 I.
 
 2
 In September 1990, Petrick was convicted of various charges in Oklahoma and received an enhanced sentence based upon his prior convictions in North Dakota and Minnesota. See Okla.Stat.Ann. tit. 21, Secs. 51 & 54 (West 1983). Petrick alleges that, after starting his sentence, he repeatedly sought assistance from the OSP library personnel regarding access to legal materials to attack the North Dakota and Minnesota convictions. Because the OSP's law library did not possess the requested North Dakota and Minnesota legal materials, Petrick sought to borrow the items through Oklahoma's Intra-Library Loan Program.
 
 
 3
 The Prison Law Library Supervisor, Billy Key, failed to accommodate Petrick's request. Key contacted both the North Dakota and Minnesota Offices of the Attorney General, but refused to authorize the expenditures necessary to obtain the materials from those two sources. Instead, Key gave Petrick the addresses to the Attorneys General and to the prison law libraries in North Dakota and Minnesota. Key also informed Petrick that he was ineligible to participate in the intra-library loan program because he was not an Interstate Compact inmate. On April 24, 1992, Petrick filed a grievance report with Dan Reynolds, the OSP Warden, challenging the Prison Law Library Supervisor's rejection of his request and itemizing desired materials for his research. On April 27, 1992, Warden Reynolds denied Petrick's request and concluded that the library did not violate prison policy. Finally, on May 22, 1992, Jerry Johnson, Deputy Director of Offender Services for the Oklahoma Department of Corrections, denied Petrick's appeal from Warden Reynolds' denial of his grievance.
 
 
 4
 After failing to obtain any legal materials to attack the two prior convictions, Petrick filed this Sec. 1983 action in the United States District Court for the Eastern District of Oklahoma. The court granted summary judgment in favor of the Defendants, concluding that the OSP had not violated Petrick's constitutional right of meaningful access to the courts. Petrick timely filed this appeal on November 13, 1993.
 
 II.
 
 5
 We review de novo the district court's grant of summary judgment and apply the same legal standard used by the district court under Fed.R.Civ.P. 56(c). Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We must view the record in a light most favorable to Petrick, who opposed the summary judgment motion. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991). Moreover, we construe Petrick's complaint liberally because he is a pro se litigant. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972); Ruark v. Solano, 928 F.2d 947, 949 (10th Cir.1991).
 
 
 6
 The Due Process Clause of the Fourteenth Amendment guarantees state inmates the right to "adequate, effective, and meaningful" access to the courts. Bounds v. Smith, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977); Green v. Johnson, 977 F.2d 1383, 1389 (10th Cir.1992). We impose "affirmative obligations" on the states to assure all inmates access to the courts and assistance in the preparation and filing of legal papers. Ramos v. Lamm, 639 F.2d 559, 583 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). The Supreme Court instructs that states may satisfy this duty "by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828, 97 S.Ct. at 1498. Although this constitutional obligation does not require states to afford inmates unlimited access to a library, Twyman v. Crisp, 584 F.2d 352, 358 (10th Cir.1978), and there exists no rigid or static formula to assess whether a prison library's resources pass constitutional muster, Johnson v. Moore, 948 F.2d 517, 521 (9th Cir.1991), states must provide inmates with "a reasonably adequate opportunity" to present their legal claims. Bounds, 430 U.S. at 825, 97 S.Ct. at 1496.[3] Cf. Dulin v. Cook, 957 F.2d 758 (10th Cir.1992) (Nevada prisoner's allegation of lack of reasonable access to Utah's appellate rules of procedure may, if proven, establish cause to excuse the prisoner's procedural default resulting from a failure timely to appeal a Utah conviction).
 
 
 7
 We evaluate Oklahoma's program "as a whole to ascertain its compliance with constitutional standards." Bounds, 430 U.S. at 832, 97 S.Ct. at 1500; Procunier v. Martinez, 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974) ("Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid."). When a state denies an inmate's request for the necessary resources to prepare a petition, and thereby infringes that inmate's constitutional right of access to the courts, we must determine whether the prison's policy is reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89-91, 107 S.Ct. 2254, 2261-63, 96 L.Ed.2d 64 (1987) (articulating standard of review to scrutinize prison regulation that impinges on inmates' constitutional right to marry); O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49, 107 S.Ct. 2400, 2404-05, 96 L.Ed.2d 282 (1987) (infringement of prisoners' constitutional rights judged under "reasonableness" test); Ramos, 639 F.2d at 579 (same). Among the penological interests that inform our analysis are the financial burden imposed on the prison by accommodating the inmate's constitutional right, whether there exist alternative means for the inmate to exercise the right, whether there is a "valid" connection between the prison policy and putative government interest, and the "absence of ready alternatives" for the prison. Safley, 482 U.S. at 89-91, 107 S.Ct. at 2261-63; Twyman v. Crisp, 584 F.2d at 359 ("Reasonable [prison law library time restrictions] are necessary to balance the rights of prisoners with budgetary considerations.").
 
 
 8
 In the instant case, the district court held that the state satisfied its obligation under Bounds by attempting to assist Petrick and that Petrick failed to demonstrate any actual injury. Order of June 2, 1993 at 2. As a threshold matter, we disagree with the court's conclusion that Petrick failed to show injury resulting from Oklahoma's failure to obtain the requested North Dakota and Minnesota materials. Because Petrick's Oklahoma sentence was enhanced pursuant to Okla.Stat.Ann. tit. 21, Secs. 51 & 54 as a result of these prior out-of-state convictions, Petrick contemplates a collateral attack on those convictions. His inability to consult the necessary legal materials thwarts this effort. The Defendants fail to refute Petrick's proffered injury arising from his enhanced sentence in Oklahoma. Their argument that Petrick cannot show actual injury because he has served the imprisonment terms from those convictions is therefore untenable.
 
 
 9
 Nor do we agree with the court's conclusion that Oklahoma met its constitutional duty under Bounds. The constitutional guarantee of "adequate, effective, and meaningful" access to the courts would mean little if a state could satisfy its affirmative duty by a mere failed attempt to accommodate an inmate who has identified a specific research problem and who would otherwise be unable to pursue that legal claim without obtaining the legal materials. "[T]he cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 825, 97 S.Ct. at 1496. We must scrutinize Oklahoma's prison law library practices while "remembering that 'meaningful access' [to the courts] is the touchstone" of the Fourteenth Amendment's guarantee. Ramos, 639 F.2d at 583. The OSP's library resources were inadequate for Petrick's legitimate queries concerning North Dakota and Minnesota law and the State has failed to demonstrate that accommodating Petrick's specific request--either by permitting him to participate in the intra-library loan program or obtaining items from North Dakota and Minnesota--would have imposed excessive costs or otherwise undermined penological interests. See, e.g., Strickler v. Waters, 989 F.2d 1375, 1385-86 (4th Cir.) (local prison law library that supplements limited federal and state resources with Corpus Juris Secundum and an intra-library loan program is constitutionally adequate), cert. denied, --- U.S. ----, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993).
 
 
 10
 In lieu of providing Petrick with an adequate law library, Oklahoma could have offered him "adequate assistance from [a person] trained in the law." Bounds, 430 U.S. at 828, 831, 97 S.Ct. at 1498, 1500 (providing non-exhaustive list of legal services, other than an adequate library, that states may offer inmates to satisfy the constitutional obligation of providing meaningful access to the courts). Having exercised its prerogative under Bounds to afford Petrick law library facilities rather than legal representation, Oklahoma owed Petrick a duty to provide adequate legal resources to him.
 
 
 11
 Of course, a prisoner must do more than make a mere conclusory allegation of need for unspecified or unlimited materials. Regarding the identification of materials sought, it will not always be possible to identify the needed material precisely in advance. DeMallory, 855 F.2d at 446. However, the materials sought should be described sufficiently so that the prison can obtain them for the prisoner without being required to perform legal research for the prisoner. Petrick's general request for a "controlling case on accepting guilty pleas within the State of North Dakota" is, therefore, excessively broad. The remainder of his request, however, is sufficiently precise to enable the prison to respond.
 
 
 12
 The prisoner must also articulate a need for the requested material with sufficient particularity so that the prisoner's need may be balanced against legitimate penological interests. See Safley, 482 U.S. at 89-91, 107 S.Ct. at 2261-63. This does not require the prisoner to prove the materiality of the materials sought as a predicate to the right to receive such material. That, of course, will often be impossible. We have noted, in that regard, that "[a] prisoners' (sic) constitutional right to access to legal resources is not conditioned on a showing of need." Ruark, 928 F.2d at 950. However, there must be a general allegation of need sufficient to enable a prison to determine the legitimacy of the request. Once again, that has been satisfied here as Petrick has adequately alleged why he is seeking the legal material concerning North Dakota and Minnesota law.
 
 
 13
 What remains to be done is to balance Petrick's adequately articulated constitutional right to access to legal materials against the legitimate penological needs of the prison and to consider reasonable alternative methods of accommodating these potentially conflicting interests. Accommodation, however, was not accomplished here because the effect of the district court's ruling was to deprive totally Petrick of his constitutional right to legal materials needed to ensure him meaningful access to the courts. Accordingly, we REVERSE and REMAND for further proceedings consistent with this opinion.
 
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. Therefore, the case is ordered submitted without oral argument
 
 
 [2]
 The materials requested included five specified cases from the Northwest Reporter, one North Dakota rule, one citation to ALR and some catch-all language requesting a "controlling case on accepting guilty pleas within the State of North Dakota."
 
 
 [3]
 Insofar as the inquiry under Bounds into the "adequacy" of the state's library resources is necessarily fact specific, courts have addressed this question on a case-by-case basis. See, e.g., Ramos v. Lamm, 639 F.2d at 584-85 (prison library's book collection is " 'wholly inadequate' to meet the minimum standards of the American Association of Law Libraries Committee on Law Library Service to Prisoners"); Johnson, 948 F.2d at 521 (prison need not provide inmates with the best possible library and a library that lacked various titles of the United States Codes nevertheless met the constitutional standard); DeMallory v. Cullen, 855 F.2d 442, 446-48 (7th Cir.1988) (prison provided inmate with constitutionally insufficient legal materials when it merely offered access to outdated versions of 1969 Wisconsin Statutes; availability of other volumes by precise citation only did not remedy the deficiency because inmates could identify precise citations only after referring to reporters, digests, or other "starter" materials); Tyler v. Black, 811 F.2d 424, 429-30 (8th Cir.) (prison library was adequate given nearly complete set of federal and regional reporters, state statutes, rules, and digests), reh'g on other grounds, 865 F.2d 181 (1987), cert. denied, 490 U.S. 1027, 109 S.Ct. 1760, 104 L.Ed.2d 196 (1989)